**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON**

**CIVIL ACTION NO. 11-404-DLB**

**JAMES E. BRAMMER**                                                                                       **PLAINTIFF**

**vs.**                           **MEMORANDUM OPINION & ORDER**

**MICHAEL J. ASTRUE, Commissioner
SOCIAL SECURITY ADMINISTRATION**                                          **DEFENDANT**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and for the reasons set forth herein, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff James Brammer filed an application for disability insurance benefits (DIB) on November 14, 2008. (Tr. 127-28). Plaintiff alleges he became unable to work on July 31, 2008. (Tr. 127-28). He claims disability due to several impairments including morbid obesity, and a right cortacoid fracture and rotator cuff tear in his right shoulder that he suffered after being electrocuted at work. (Tr. 140-47). His application was denied initially and upon reconsideration. (Tr. 26). At Plaintiff's request, an administrative hearing was conducted on June 25, 2010, by Administrative Law Judge (ALJ) Don C. Paris. (Tr. 37-65). On July 9, 2010, the ALJ ruled that Plaintiff was not disabled and therefore not entitled to DIB. (Tr. 26-33). This decision became the final decision of the Commissioner when the

Appeals Council denied review on October 18, 2011.  (Tr. 1-6).

On December 12, 2011, Plaintiff filed the instant action.  The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication.  (Docs. # 6, 7).

## II.  DISCUSSION

### A.  Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations.  *See Cutlip*, 25 F.3d at 286.  Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). However, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

The ALJ, in determining disability, conducts a five-step analysis.  Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of

the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B. The ALJ's Determination

At Step 1, the ALJ found that there was no evidence that Plaintiff had engaged in substantial gainful activity since the alleged onset of his disability. (Tr. 28). At Step 2, the ALJ found Plaintiff's morbid obesity and his "status post electrical injury with right cortacoid fracture and irreparable massive right rotator cuff tear" to be severe impairments within the meaning of the regulations. (Tr. 28).

At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 29). First, the ALJ concluded that Plaintiff's shoulder conditions do not meet or equal the requirements of Listing 1.02B (major dysfunction of a major peripheral joint in each upper extremity) because the evidence did not show the involvement of a major joint in each upper extremity. (Tr. 29). Second, the ALJ concluded that Plaintiff's obesity does not meet the requirements of a listing. (Tr. 29). Because obesity no longer has its own listing, a claimant's obesity can only "meet" the requirements of a listing if the claimant has another qualifying impairment. (Tr. 29). Since Plaintiff did not have another qualifying impairment, his obesity did not meet the requirements of a

listing. (Tr. 29).

At Step 4, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to perform a range of unskilled entry level light work with the additional following restrictions:

> occasionally lift and carry 20 pounds and frequently ten, but can lift no more than five pounds with the right arm; can stand and walk a total of six hours in an eight hour day; sit six hours in an eight hour day; can only occasionally push, pull, or use controls with the right upper extremity; only occasionally climbs ramps and stairs, and never ladder, ropes, or scaffolds; only occasionally stoop, kneel, or crouch; and never crawl. The claimant cannot reach overhead or perform activities above the waist or away from the body with the right upper extremity; can only occasionally handle with the right hand; should avoid concentrated exposure to full body vibration; should not use vibratory hand tools with the right hand; and should avoid all hazards such as unprotected heights and dangerous machinery.

(Tr. 29-30). Based upon this RFC, the ALJ concluded at Step 4 that Plaintiff was unable to perform any past relevant work. (Tr. 32).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found that, despite Plaintiff's severe impairments, there were a significant number of jobs available to him in the national economy. (Tr. 32). The ALJ based this conclusion on testimony from a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC. (Tr. 62-63). The VE testified that a hypothetical individual with Plaintiff's vocational profile and RFC could work as a ticket taker (85,000 jobs nationally), a parking lot attendant (50,000 jobs nationally), or a courier (156,000 jobs nationally). (Tr. 63). Because the positions listed by the VE existed in significant numbers in the national economy, and because the ALJ found that Plaintiff could successfully adjust from his past relevant work to these new positions, the ALJ concluded that Plaintiff was not under a "disability," as

defined by the Social Security Act.  (Tr. 33).

### C. Analysis

Plaintiff advances four arguments on appeal.  First, Plaintiff argues that the ALJ erroneously discriminated between the opinions of examining physicians, Dr. Frank Burke (the consulting orthopedist) and Dr. Gregory T. Snider (a general practitioner).  Second, Plaintiff argues that the ALJ did not provide an adequate justification for according little weight to the opinion of Dr. Ralph Crystal, the vocational consultant.  Third, Plaintiff asserts that the ALJ erred in finding that Plaintiff is capable of light work, when the record evidence demonstrates he is only capable of sedentary work.  Fourth, Plaintiff asserts that the ALJ failed to give "great weight" to the opinion of his treating orthopedist, Dr. Scott D. Mair, that Plaintiff "is not able to return to work."  Each of these arguments will be addressed in turn.

### 1. The ALJ did not erroneously discriminate between the opinions of examining physicians, Dr. Frank Burke and Dr. Gregory Snider.

Plaintiff argues that the ALJ erred in giving "great weight" to the opinion of Dr. Gregory Snider, a consulting general practitioner, while according "little weight" to the opinion of Dr. Frank Burke, a consulting orthopedic surgeon.  The Court will discuss Dr. Burke's opinion first, and then proceed to Dr. Snider's opinion.

#### a. The opinion of Dr. Frank Burke, consulting orthopedic surgeon

Dr. Burke opined that he "d[id] not think [Plaintiff] could go to any job at all and would place him at total disability."  (Tr. 246).  Plaintiff understandably wishes that the ALJ had relied on this opinion.  For several reasons, however, Dr. Burke's "opinion" was not entitled to deference.

5

First and foremost, this so-called "opinion" is not an opinion at all. Whether a plaintiff is disabled is a matter that is "reserved to the Commissioner," and thus a physician's opinion on disability is "never entitled to controlling weight or special significance." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 274 (6th Cir. 2010) (quoting SSR 96-5p, 1996 WL 374183, at *2) (additional internal citation omitted).

Second, Dr. Burke was not Plaintiff's treating physician, and examined him only one time. A consulting physician's opinion is not entitled to the same deference as that of a treating physician. *Barker v. Shalala*, 40 F.3d 789, 794 (1994). This rule applies with even greater force where, as here, the consulting physician examined the plaintiff only once. *See e.g. Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 572 (1989); *Ferguson*, *supra*.

Third, as the Commissioner notes, Dr. Burke's statement is inconsistent with the record evidence. Drs. Snider and Mair, and Dr. Carlos Hernandez (a medical consultant) all opined that Plaintiff could still work. (Tr. 258-59; Tr. 247-54). Moreover, Plaintiff himself testified that he performs farm chores and cares for his nine-year old granddaughter. (Tr. 32, 42-43, 52, 56).

In addition, contrary to Plaintiff's protestations, the ALJ did not "disregard" Dr. Burke's opinion simply because it was "favorable to Plaintiff." (Doc. # 6-1, at 9) (citing *Lashley v. Sec'y of H.H.S.*, 708 F.2d 1048, 1054 (6th Cir. 1983). In fact, the ALJ explicitly addressed Dr. Burke's opinion, noting that it was inconsistent with the record evidence, that it was based on a single examination, and that Dr. Burke found that Plaintiff had not yet reached "maximum medical improvement." (Tr. 31). The ALJ's decision to accord Dr. Burke's opinion "little weight" was thus supported by substantial evidence. (*Id.*).

6

### b. The opinion of Dr. Gregory Snider, consulting general practitioner

So, too, the ALJ's decision to accord Dr. Snider's opinion "great weight" was supported by substantial evidence. (Tr. 31). Although Dr. Snider opined that Plaintiff "will be unable to return to work *as a plumber*," he did not restrict Plaintiff from all forms of work. (Tr. 258) (emphasis added); *see Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 596 (6th Cir. 2005) ("[A] lack of physical restriction constitutes substantial evidence for a finding of non-disability."). Instead, he merely suggested restrictions on Plaintiff's use of his right arm. (*Id.*). Importantly, Dr. Snider did not restrict Plaintiff's use of his left arm, nor report finding any injury to that arm. Instead, Dr. Snider reported that he "[could] not identify *any significant electrical injury* to the extremity or other parts of the body" (Tr. 258) (emphasis added).

Dr. Snider's opinion was consistent with that of Plaintiff's treating physician, Dr. Mair, who recommended that Plaintiff should "see if he can be retrained for another line of work" (Tr. 259). It was also consistent with the opinion of Dr. Hernandez, who determined that Plaintiff could perform light work with certain limitations. (Tr. 247-54). Finally, it was consistent with Plaintiff's admitted ability to perform farm chores, house work, and child care. (Tr. 32, 42, 52, 56).

Plaintiff argues that the ALJ could have preferred the opinion of Dr. Burke, a specialist, over that of Dr. Snider, a general practitioner. (Doc. # 6-1, at 10) (citing *Stephens v. Heckler*, 766 F.2d 284 (7th Cir. 1985) (holding that an ALJ has the discretion to accord greater weight to the opinion of a specialist rather than a general practitioner)) (additional citation omitted). Although it is true that under SSA regulations, the Agency

7

"generally give[s] more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist," 20 C.F.R. § 404.1527(c)(5), all medical opinions are evaluated for their consistency with the record as a whole, regardless of their source. 20 C.F.R. § 404.1527(c)(4); *see also*, *Haggard v. Apfel*, 175 F.3d 591, 595 (8th Cir. 1999) (holding that even a treating physician's opinion is afforded less deference when it is inconsistent with the record evidence). Here, as noted above, Dr. Burke's opinion was inconsistent with the record as a whole, while Dr. Snider's opinion was consistent with it. Thus, the ALJ properly applied SSA regulations in preferring the opinion of Dr. Snider over that of Dr. Burke.

### 2. The ALJ was not obligated to defer to the opinion of the vocational consultant, Dr. Ralph Crystal

Plaintiff argues that the ALJ should have accorded greater weight to the opinion of the vocational consultant, Dr. Ralph Crystal, who concluded that Plaintiff was "disabled from performing jobs in the economy." (Tr. 287). However, as noted above, a finding of disability is the Commissioner's prerogative. *See Ferguson*, 628 F.3d at 274. Furthermore, under Social Security regulations, vocational consultants are not acceptable medical sources. *See* 20 C.F.R. §§ 404.1513(a)(1)-(5) (defining acceptable medical sources as physicians, psychologists, optometrists, podiatrists, and speech language pathologists); *Wooten v. Astrue*, No. 1:11–705–RMG–SVH, 2012 WL 3150536, at *12 (D.S.C. July 11, 2012) (holding that a vocational expert is not an acceptable medical source). Therefore, the ALJ appropriately accorded little weight to Dr. Crystal's opinion.

### 3. Substantial evidence supports the ALJ's residual functional capacity (RFC) assessment that Plaintiff is capable of light work, not merely sedentary work

Plaintiff argues that the ALJ should have classified his RFC as consistent with

8

sedentary work rather than light work, thereby entitling him to disability benefits under Medical Vocational Guideline Rule 201.14. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2. (classifying as disabled those high school graduates [or more], ages 50-54, who are restricted to sedentary work and who lack transferable skills). "Residual functional capacity is defined as the 'maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs.'" *Cohen v. Sec'y of Dept. of Health & Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00© (1989)). Simply put, RFC is "what you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). The Court reviews an ALJ's RFC determination for substantial evidence. *See, e.g.*, *Norris v. Commissioner of Soc. Sec.*, 461 F. App'x. 433, 440 (6th Cir. 2012).

Here, the ALJ found that Plaintiff had the RFC for light work. Light work requires the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Sedentary work, by contrast, has a lifting maximum of ten pounds. 20 C.F.R. § 404.1567(a). According to the ALJ, Plaintiff fit within the light work category because he could "occasionally lift and carry 20 pounds and frequently ten," even though he could "lift no more than five pounds with the right arm." (Tr. 29).

Plaintiff argues that his restricted lifting capacity with his right arm renders him incapable of all but sedentary work. He bases his argument on the opinion of Dr. Snider, who recommended a "five-pound lift/push/pull limit with [Plaintiff's] right arm." (Tr. 258). The Commissioner responds that Dr. Snider did not limit Plaintiff's ability to lift with his left arm, and thus he is still capable of light work. (Doc. # 7, at 8 fn. 4).

9

The ALJ's finding was supported by substantial evidence. Dr. Hernandez, the medical consultant, determined that despite Plaintiff's limited ability to push or pull with his right upper extremity, he could still occasionally lift twenty pounds, and frequently lift ten pounds. (Tr. 248). In addition, Dr. Snider only restricted Plaintiff's use of his right arm, not his left. In fact, Dr. Snider disagreed with Dr. Burke's assessment that Plaintiff had developed "impingement syndrome" in his left shoulder due to "overuse." Dr. Snider opined that overuse was "unlikely" since Plaintiff had used his left arm "only for basic activities of daily living and has not been attempting to work or perform repetitive activities with that arm." (Tr. 276). Moreover, Dr. Snider could not "identify any significant electrical injury" to any part of Plaintiff's body besides his right shoulder. (Tr. 258). Finally, Plaintiff himself has admitted that he performs numerous activities with his left arm. These activities include: feeding and caring for numerous animals and generally maintaining his 54-acre family farm, doing laundry and dishes, going grocery shopping, caring for his granddaughter, and driving his truck and all-terrain vehicle. (Tr. 32). In Plaintiff's own words, "[I] use my left hand for everything." (Tr. 155).

Plaintiff's testimony, in conjunction with the opinions of Drs. Snider and Hernandez, amounts to "more than a mere scintilla" of proof; they constitute substantial evidence on which the ALJ properly based his decision. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (holding that substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal citation omitted). Furthermore, the implicit premise of Plaintiff's argument—that a claimant with a lifting restriction on one arm cannot sufficiently compensate with the other arm to perform light work—is faulty. Indeed, claimants with

10

such restrictions on a single arm have been found capable of light work. *See, e.g.*, *Diehl v. Barnhart*, 357 F.Supp.2d 804, 810-814 (E.D. Pa. 2005) (finding claimant capable of light work even where he had severe nerve damage to his right hand, and could only "use the right arm occasionally for grasping...or as an assist for pushing and pulling"). Therefore, Plaintiff's argument fails.

### 4. The ALJ appropriately weighed the statement of Plaintiff's treating orthopedist, Dr. Mair, that Plaintiff "is not able to return to work."

Plaintiff contends that the ALJ ignored the opinion of Dr. Scott Mair, his treating orthopedist, that "[Plaintiff] is not able to return to work." (Tr. 221). By contrast, the Commissioner argues that Dr. Mair was referring to "Plaintiff's work as a plumber, not all work." (Doc. # 7, at 9). The record reflects that Dr. Mair made several statements regarding Plaintiff's ability to work. The one to which Plaintiff refers was issued in November 2008, about two months after Plaintiff underwent surgery to repair the electrocution injury to his right shoulder. Dr. Mair opined: "At this point, [Plaintiff] will continue with physical therapy. He *is not able to return to work*. He understands that he will *likely not be able to return to his prior occupation* and will discuss that with his employer. We will check him back in six weeks to see whether he has made any progress." (Tr. 221) (emphasis added). The statement upon which the Commissioner relies was authored in March 2009, seven months post-surgery. In that statement, Dr. Mair recommended that Plaintiff should "see if he can be retrained for another line of work." (Tr. 259). In his decision, the ALJ only referenced the March 2009 statement, and did not mention the November 2008 statement. (Tr. 30-31).

11

The Court's role is not to resolve conflicting evidence. *See Cutlip*, 25 F.3d at 286. That is the role of the ALJ. *See Orange v. Island Creek Coal Co.*, 786 F.2d 724, 727 (6th Cir. 1986) ("[I]t is up to the ALJ to resolve conflicting evidence"); *see also, Long v. Apfel*, 1 F. App'x 326, 331 (6th Cir. 2001) ("The ALJ must resolve conflicts in the evidence") (citing 20 C.F.R. §§ 416.927, 416.929) (additional citation omitted). The Court's function is to affirm the Commissioner's decision, provided it is supported by substantial evidence, and made pursuant to the proper legal standards. *See Cutlip*, *supra*. With regard to the opinions of treating physicians, the ALJ must accord such opinions "substantial deference, and if the opinions are uncontradicted, complete deference." *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)

In this case, the Court has already found that substantial evidence exists to support the ALJ's conclusion that Plaintiff is not disabled. This conclusion is not altered by the ALJ's treatment of Dr. Mair's opinion. The ALJ properly accorded Dr. Mair's opinion "significant weight" (Tr. 31), and even Plaintiff admits that the ALJ conducted a "thorough review" of Dr. Mair's findings. (Doc. # 6-1, at 12). Plaintiff's real objection seems to be that the ALJ did not adopt *Plaintiff's interpretation* of Dr. Mair's opinion. However, substantial evidence exists to show that Plaintiff's interpretation is inaccurate. In four separate statements, including the November 2008 statement upon which Plaintiff relies, Dr. Mair clearly stated that Plaintiff would likely not be able to perform his prior occupation *as a plumber*. (Tr. 221-23, 259). Moreover, Dr. Mair's statement that Plaintiff should "see if he can be retrained for another line of work" (Tr. 259) wholly discredits the notion that Dr. Mair viewed Plaintiff as disabled.

One can only conclude otherwise by viewing the solitary quote cited by Plaintiff (that he "is not able to return to work") in complete isolation. This the ALJ was not required to do. Indeed, if Plaintiff truly thought that the ALJ misinterpreted Dr. Mair's opinion, he could have argued that the ALJ should have sought clarification from Dr. Mair. *See* 20 C.F.R. § 404.1512(e)(1) (indicating that the SSA will re-contact a treating source when his opinion is unclear). However, Plaintiff has not made this argument.

Accordingly, the Court finds that Plaintiff's argument regarding the ALJ's treatment of Dr. Mair's opinion is without merit.

## II.   CONCLUSION

For the reasons stated herein, the Court concludes that the ALJ's finding that Plaintiff was not disabled for purposes of the Social Security Act was supported by substantial evidence. Accordingly, for the reasons stated,

**IT IS ORDERED** as follows:

1. The decision of the Commissioner is supported by substantial evidence and is hereby **AFFIRMED**;
2. Plaintiff's Motion for Summary Judgment (Doc. # 6) is hereby **DENIED**;
3. Defendant's Motion for Summary Judgment (Doc. # 7) is hereby **GRANTED**;
4. A Judgment affirming this matter will be entered contemporaneously herewith.

This 7th day of January, 2013.



Signed By:
*David L. Bunning*  DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\Lexington\5-11-404 Brammer MOO.wpd